## CITY OF WINONA *v.* COWDREY.

The contract between the city of Winona and the Minnesota Railway Construction Company, bearing date April 23, 1870, construed, and the rights of the respective parties thereto discussed.

ERROR to the Circuit Court of the United States for the District of Minnesota.

This was an action against the city of Winona upon certain coupons attached to bonds, referred to in a contract between the city and the Minnesota Railway Construction Company, which is as follows: —

"This agreement, made this twenty-third day of April, 1870, by and between the city of Winona, of the State of Minnesota, and the Minnesota Railway Construction Company, a corporation organized under the laws of the State of Minnesota, and now engaged in the construction of the St. Paul and Chicago Railway, witnesseth: —

"That whereas the building of a railroad from St. Paul to Winona is of great public utility and benefit, and a public improvement, which, it is believed, would be particularly beneficial and advantageous to the city of Winona; and whereas said St. Paul and Chicago Railway will connect, by bridge or ferry, at Winona with the La Crosse, Trempealeau, and Prescott Railroad, now being constructed, and will, when both railroads are completed, open and fur-

.nish an unbroken line of travel by railroads through Winona, between St.. Paul and Milwaukee and Chicago, which also is considered especially beneficial and advantageous to the city of Winona; and whereas, in view of the premises, and as an inducement and part compensation to the Minnesota Railway Construction Company, the city of Winona is willing and proposes to issue and deliver to the said construction company its bonds to the nominal amount of $100,000, to aid in the building of said railroad from St. Paul to Winona, and, for the purpose of thus securing a line of travel by railroad between the East and the West through said city, as aforesaid, the city of Winona, in consideration of the premises, hereby agrees, the Minnesota Railway Construction Company keeping and performing their agreement as herein set forth, to make, sign, seal, and deliver, for the use and benefit of the said Minnesota Railway Construction Company, its obligations or bonds, in sums of $1,000 each, to the aggregate amount of $100,000, obligating the said city to pay the amount specified therein to Russell Sage and others, of the city and State of New York, or to the bearer, in twenty years from the first day of January, A.D. 1871, — viz., on the first day of January, A.D. 1891, — in the city of New York, with interest at the rate of six per cent per annum; the interest to be paid semi-annually, on the first day of January and July of each year, in the city of New York; and to deposit said bonds with the First National Bank of St. Paul, in the State of Minnesota, to be held by said depositary in escrow or in trust, to be delivered as hereinafter provided.

" The Minnesota Railway Construction Company hereby, on their part, the city of Winona keeping and performing its agreement as herein contained, agree : —

" *First,* To either, in their own name or that of their successors or assigns, or in the name of the St. Paul and Chicago Railway Company, build and equip a good and substantial railway from the city of St. Paul to the city of Winona (excepting a bridge across the Mississippi River at Hastings), and put it into operation within three years from this date, and to connect at Winona, by bridge or ferry, with the La Crosse, Trempealeau, and Prescott Railroad.

" *Second,* That said part of raid railway, between a point on the Winona and St. Peter Railroad at or near Minnesota City, in Winona County, and the village of Minneiska, in Wabasha County, shall be built, equipped, and put into operation within one year from this date.

" *Third,* That the La Crosse, Trempealeau, and Prescott Railroad, from its terminus opposite Winona, as now located and fixed

(which terminus shall not be changed without the consent of the city of Winona), to a point on the Milwaukee and St. Paul Railway east of North La Crosse, shall be built, equipped, and put into operation within the year 1870.

"It is further agreed, by and between the parties hereto, that the said bonds are to be, in form, plain unconditional obligations, and substantially of the form and tenor of schedule A, hereto annexed, and are to be executed as soon as practicable, and placed in the custody of said depositary, to be delivered as hereinafter provided.

"It is further agreed, as to the delivery of said bonds, as follows : —

"*First*, That if the said La Crosse, Trempealeau, and Prescott Railroad is not built, equipped, and put into operation, as aforesaid, between the points aforesaid, within the year 1870, then, and in that event, the said bonds and coupons shall be by said depositary returned to the city of Winona, or to its legally authorized agent.

"*Second*, That if a railroad from a point on the Winona and St. Peter Railroad, at or near Minnesota City, in Winona County, to Minneiska, in Wabasha County, is not built, equipped, and put into operation, as aforesaid, within one year from this date, then, and in that event, said bonds and coupons shall be by said depositary returned to said city of Winona or its legally authorized agent.

"*Third*, That if a railroad is not built, equipped, and put into operation from St. Paul to Winona (except the bridge at Hastings), as aforesaid, connecting at Winona, by bridge or ferry, with the La Crosse, Trempealeau, and Prescott Railroad within three years from this date, then, and in that event, the said bonds and coupons shall be by said depositary returned to said city of Winona, or to its legally authorized agent ; but in no case shall the said bonds, or any part thereof, be delivered by said depositary to the said Minnesota Railway Construction Company until a truss railroad bridge is constructed across the Mississippi River, at Winona, connecting the said St. Paul and Chicago Railway, or the Winona and St. Peter Railroad, with the La Crosse, Trempealeau, and Prescott Railroad, at the present terminus of the last-named railroad. But if, in each and every of the respects above mentioned, the said railroads, and the several parts of said railroads, are built, equipped, and put into operation within the times and in the manner above agreed, and said railroad bridge constructed as above provided, then, and in

that event, and in that event only, shall the said bonds be delivered to said Minnesota Railway Construction Company by said depositary.

"It is further agreed, that, while said bonds are legally held in custody or trust by said depositary, as aforesaid, the interest-coupons, as they mature and become due, are to be delivered to the said construction company.

"It is further agreed, that the city of Winona shall have no cause of action against the Minnesota Railway Construction Company, by reason of the failure to build said lines of railroads, or any part thereof.

"In witness whereof, the said city of Winona has authorized their mayor to sign this instrument in their corporate name, and the city recorder to attest the same with his official signature and the seal of the city, and the board of directors of the Minnesota Railway Construction Company have authorized their president and secretary to sign, seal, and deliver the same in their corporate name.

"CITY OF WINONA,

"[SEAL.]                         By WM. S. DREW, *Mayor.*

"Attest: CHAS. F. SCHROTH, *City Recorder.*

"MINNESOTA RAILWAY CONSTRUCTION COMPANY,

"[SEAL.]                         By RUSSELL SAGE, *President.*

"Attest: JAMES M. McKINLEY, *Assistant Secretary.*"

Schedule A, referred to in the foregoing contract, is as follows:—

"*Form of Deed.*

"STATE OF MINNESOTA, CITY OF WINONA.

"No.,                                              $1,000.

"Know all men by these presents, that the city of Winona, in Winona County, State of Minnesota, is indebted to Russell Sage and others, of the city and State of New York, or bearer, in the sum of $1,000, which they promise to pay to the bearer hereof, on the first day of January, 1891, in the city of New York, with interest thereon from the first day of January, 1871, at the rate of six per cent per annum, payable semi-annually at the Importers' and Traders' National Bank, in the city of New York, on the first day of January and July in each year, on the presentation and surrender of the annexed coupons as they severally become due.

"This bond is one of a series of like tenor and effect issued by

the city of Winona, to the amount of $100,000, to aid in the construction of a railroad from St. Paul to Winona.

" In witness whereof, the city of Winona has caused this bond to be sealed, signed, and delivered in their corporate name, by order of the city council of said city, pursuant to their resolutions in this respect passed            , 1870.

    " [SEAL.]                    The City of Winona,

                          " By            , *Mayor.*

    " Attest :              , *City Recorder.*"

The remaining facts are set forth in the opinion of the court, and it is unnecessary to restate them here.

There was a verdict for the plaintiff, and judgment was entered thereon.

The city of Winona sued out this writ.

Argued by *Mr. Thomas Wilson* for the plaintiff in error, and by *Mr. Charles E. Flandrau* for the defendant in error.

Mr. Justice Davis delivered the opinion of the court.

This suit involves the interpretation of the contract between the city of Winona and the Minnesota Railway Construction Company, bearing date April 23, 1870. It was brought on certain coupons which were attached to the bonds whereof mention is made in that contract, and delivered by the depositary to the company after one-half of them in number and value were overdue. They were received by the plaintiff below, after their maturity and before the commencement of this suit.

The company stipulated that within three years from that date it would build, equip, and put in operation in its own name, or that of its successors and assigns, or of the St. Paul and Chicago Railway Company, a good and substantial railway from St. Paul to Winona (excepting a bridge across the Mississippi River at Hastings), and connect at Winona by bridge or ferry with the La Crosse, Trempealeau, and Prescott Railroad; that a part of said railway between certain points specifically mentioned should be completed and put in operation within one year; and that the La Crosse, Trempealeau, and Prescott Railroad, from its terminus opposite Winona, should be put in operation to a point on the Milwaukee and St. Paul Railway east of north La Crosse within the year 1870.

It was only by performing the stipulated conditions within the designated periods that the company could acquire a valid title to these evidences of indebtedness. In no case was any part of them to be delivered until a truss railroad bridge should be constructed across the Mississippi River at Winona, connecting the St. Paul and Chicago Railway, or the Winona and St. Peter Railroad, with the La Crosse, Trempealeau, and Prescott Railroad, at the then terminus of the latter.

These are the leading provisions of the contract. Its preamble recites that the construction of a railroad from St. Paul to Winona is of great public utility, and particularly advantageous to the latter city, and discloses that the controlling inducement for furnishing the promised aid to the company is to secure an unbroken line of travel by railroad between the East and West through Winona.

The depositary in whose hands the bonds and coupons were placed delivered them to the construction company March 27, 1872, after the road had been built from St. Paul to the western limits of Winona, and its track connected there with that of the Winona and St. Peter Railroad.

The liability of the city to pay these coupons is denied chiefly upon the ground that there was not such a compliance with the contract by the construction company as would entitle it to the possession of them.

The bill of exceptions shows that evidence was given tending to prove that the roads and parts of road mentioned in the contract had been respectively constructed, equipped, and put in operation within the appointed time, and the verdict of the jury is conclusive upon the questions of fact involved in the issue.

The exceptions to the charge of the court do not each require a special or extended consideration. At the date of the contract, the construction company had, for a certain consideration, agreed with the St. Paul and Chicago company to construct and equip its road between Chicago and St. Paul, and obtain the necessary right of way. It was to receive all gifts, bounties, or aids that might be given by any corporation or municipality to aid in building the projected road. The railroad company sold its road Jan. 3, 1872, to the Milwaukee and St. Paul Railway

Company, and the latter was properly held by the court below to be the successor of the construction company within the meaning of the contract. That part of the road which was to be completed within twelve months was equipped and put in operation by the Winona and St. Peter Railroad Company, under a contract with the Chicago and St. Paul Railroad Company, with the assent and approval of the construction company. In our opinion the court below correctly held, that constructing, equipping, and putting in operation the road between St. Paul and Winona by the construction company, the St. Paul and Chicago company, or the assignees of either, was in that regard a sufficient compliance with the contract.

The remaining charge to which exception was taken relates to the connection of the road from St. Paul with the track of the St. Peter Railway within the limits of Winona. The court instructed, that a connection of the track of the last-named railway with the railroad bridge across the river at Winona — said bridge connecting with the La Crosse Railroad at the point named in the contract — was a connection by bridge or ferry within the meaning of that contract, if, after the purchase of the St. Paul and Chicago Railroad by the Milwaukee and St. Paul Railroad Company, the latter company continued to run its cars over the railroad bridge and the Winona and St. Peter Railroad within the limits of the city.

It is contended that building the railway from St. Paul to the western limit of Winona, and uniting it there with the Winona and St. Peter road at a point more than a mile west of the west end of the bridge connecting the latter road with the La Crosse Railroad, was not, in the just sense of the term, a connecting of the road from St. Paul by bridge with the La Crosse Railroad, within the meaning or purview of the contract.

The contract, as we construe it, stipulates that the contemplated connection may be made by means of the Winona and St. Peter Railroad. One of its early provisions declares that the connection between the St. Paul and the La Crosse roads at Winona shall be by means of a bridge or ferry; but a subsequent one is express, that the bonds shall not be delivered until the bridge is constructed across the river at Winona, connecting the St. Paul Railway or the Winona and St. Peter road with

the La Crosse road at the then terminus of the latter.   It was, therefore, optional with the construction company to build the St. Paul Railway over the bridge, and form an actual junction with the La Crosse road; or to build it to any point in the city, and make the required connection by means of the Winona and St. Peter road.   Either of these modes would secure the object desired by the city, — an uninterrupted communication by rail from St. Paul across the river at Winona to the eastern seaboard.

It is contended that the contract is against public policy and without consideration.   The obvious answer is, that it was expressly sanctioned by an act of the legislature of the State, and was designed to insure and expedite the construction of works of internal improvement deemed of vital importance to the material interests of the city.   Whether it be expedient to invest municipal corporations with authority to aid in building railways, is a question foreign to the present inquiry; but where, as in this instance, it has been conferred and exercised, and the city has secured the advantages of the contract, the law will not suffer her to escape from its obligations.

*Judgment affirmed.*