THE CITY OF WINONA *vs.* HORACE THOMPSON and another.

October 17, 1877.

**Written Agreement—When Parol Evidence is Inadmissible to Aid in its Construction.**—When the language and terms of a written agreement are plain and unambiguous, and the subjects to which they relate are definite and certain, parol evidence, either of extrinsic facts, or of the admissions and statements of the parties thereto, or their agents, in respect to its meaning, or their intentions in making it, is inadmissible to aid in its construction.

**Contract Construed.**—The provisions of a contract between the respondent and the Minnesota Construction Company construed.

This was an action for the alleged conversion of certain bonds, brought originally in the district court for Winona county, but afterwards removed to the district court of Steele county. The complaint set out an agreement in writing between the city of Winona and the Minnesota Railway Construction Company, made April 30, 1870, wherein it was recited that the said Minnesota Construction Company was engaged in the construction of the St. Paul & Chicago Railway, and that the building of a railroad from St. Paul to Winona would be of great public utility and benefit, and a public improvement which it was believed would be particularly beneficial and advantageous to the city of Winona; that said St. Paul & Chicago Railway would connect by bridge or ferry at Winona with the La Crosse, Trempealeau & Prescott Railroad, then being constructed, and would, when both said roads were completed, open and furnish an unbroken line of travel by railroad through Winona, between St. Paul, Milwaukee and Chicago, which it was also considered would be especially beneficial and advantageous to the city of Winona. In view of the premises, and as an inducement and part compensation to the Minnesota Railway Construction Company, it was therefore stipulated in the said contract that the said city of Winona should make, sign, seal and deliver, for the use and benefit of the said construction company, the bonds in con-

troversy, and deposit the same with the First National Bank of St. Paul, to be held by said depositary in escrow or in trust, and to be delivered as thereinafter provided; that the said company should, either in their own name or that of their successor or assigns, or in the name of the St. Paul & Chicago Railway Company, build and equip a good and substantial railway from the city of St. Paul to the city of Winona, (excepting a bridge across the Mississippi river at Hastings,) and put it into operation within three years from the date of said agreement, and to connect at Winona, by bridge or ferry, with the La Crosse, Trempealeau & Prescott Railroad; that that part of said railway between a point on the Winona & St. Peter Railroad, at or near Minnesota City and the village of Minneiska, should be built, equipped, and put into operation within one year from the date of the said agreement; that the La Crosse, Trempealeau & Prescott Railroad, from its terminus opposite Winona, as now located and fixed, (which terminus should not be changed without the consent of the city of Winona,) to a point on the Milwaukee & St. Paul Railway east of North La Crosse, should be built, equipped and put into operation within the year 1870; that if the said La Crosse, Trempealeau & Prescott Railroad, and a railroad from Minnesota City to Minneiska, and a railroad from St. Paul to Winona, were not built, equipped, and put into operation as aforesaid, then, and in each event, the said bonds should be returned by the said depositary to the city of Winona or its legally authorized agents; that in no case should the said bonds, or any part thereof, be delivered by the said depositary to the said construction company until a truss railroad bridge was constructed across the Mississippi river at Winona, connecting the said St. Paul & Chicago Railway, or the Winona & St. Peter Railroad, with the La Crosse, Trempealeau & Prescott Railroad, at the present terminus of the last named railroad; but that, if in each and every of the respects above mentioned, the said railroads and several parts of said railroads were built, equipped, and put into operation within the times and in the

manner above agreed, and said railroad bridge constructed as above provided, then and in that event, and in that event only, should the said bonds be delivered to the said construction company by the said depositary.

The complaint further alleged the delivery of the bonds to the defendant Horace Thompson, then cashier of the First National Bank of St. Paul, to be by him held in escrow or in trust as above stipulated; their acceptance by the said defendant, and their subsequent transfer to the Minnesota Railway Construction Company, before the said company had complied with the conditions of the said contract, and thereby become entitled to the said bonds.

The defendants, Horace Thompson and the Minnesota Railway Construction Company, admitted in their separate answers the delivery of the bonds as set forth in the complaint, but alleged that the said delivery was lawful by reason of a performance of the said contract by the said construction company, and was fully authorized by the provisions of that instrument. The issues thus raised by the pleadings were tried by *Lord,* J., without a jury. Upon the trial the plaintiff offered to prove by the city attorney, the mayor, and certain members of the common council of the city of Winona, that D. C. Shepard arranged or negotiated the contract, set out in the complaint, with the city of Winona, on behalf of the Minnesota Railway Construction Company; that at the time of the negotiation of that contract it was expressly agreed and understood by the city of Winona, and by the aldermen and mayor of the said city, and by Mr. Shepard on behalf of the construction company, that the St. Paul & Chicago Railway, referred to in the said contract, should be built not only to the western line of the city of Winona, but should be likewise built to the west bank of the Mississippi river, opposite to the western terminus of the La Crosse, Trempealeau & Prescott Railroad, to-wit, to such a point as would be spanned by a bridge or ferry connecting the two roads; that the said Shepard and the city council of Winona, in

making the said contract, so construed its meaning, and that such was the meaning and intention of the council of the said city in making the said contract; that Shepard at that time conceded that the said road would be built to Winona in any event, but represented that unless the bonds in controversy were voted, the road would not be built down to the west bank of the Mississippi river, to the point indicated, but would be built back of the city of Winona, where it is now built; and that the bonds were given to secure the building of the road to that point, instead of where it is now built.

Upon objection, the court ruled that the evidence was admissible, and the defendants duly excepted. The court, also, under objection, permitted Earl S. Youmans to testify to a private conversation held between himself and Mr. Shepard in relation to the aforesaid contract, and before the same was finally executed—the court ruling in that instance that the said conversation would be admissible if Mr. Shepard, as agent of the construction company, while negotiating for the contract, made any statements tending to show his knowledge as such agent, before the signing of the contract, of the meaning or construction that was being given to it by the city, in order to show what that construction was, and also as tending to show Shepard's assent at the time to such construction or understanding of the city. Evidence was also admitted for the plaintiff, under objection and exception, as to the construction of the road from Winona to La Crosse, along the west bank of the Mississippi river, the building of a bridge across the river at La Crosse, and the subsequent operation of the road by the Milwaukee & St. Paul Railroad Company, in connection with the Chicago & St. Paul Railway Company. The court found, among other things, that a truss railroad bridge, connecting the La Crosse, Trempealeau & Prescott Railroad with the Winona & St. Peter Railroad, was built by the Chicago & Northwestern Railroad Company across the river at Winona in 1872; that the parties to the

contract under consideration intended by the words "to con-
nect at Winona by bridge or ferry," and "connecting at
Winona by bridge or ferry," an immediate road connection,.
and not a mere running or business connection, nor a con-
nection by the use or means of an intermediate road; that
the defendant construction company had failed to perform its.
agreement with plaintiff, in that it had never, in its own
name or otherwise, nor had its successors or assigns, con--
structed a railroad from St. Paul to Winona (except a.
bridge across the Mississippi river at Hastings) connect-
ing at Winona by bridge or ferry with the La Crosse,.
Trempealeau & Prescott Railroad, nor equipped and put
in operation such a road, nor equipped and put in oper-
ation a railroad from St. Paul to Winona, or any part.
thereof; that it had constructed and made ready for equip-
ment and operation the St. Paul & Chicago Railway, from
St. Paul to, and just within the corporate limits of, Winona,
and there connected it with the Winona & St. Peter Railroad,.
at a point remote from the river, and a mile and a half dis-
tant from any practicable point to connect the same, by
bridge or ferry, with the La Crosse, Trempealeau & Prescott
Railroad, and that it had done nothing more. The court,.
therefore, ordered judgment to be entered for the plaintiff..
The court also filed the following opinion as to the construc-
tion of the contract: "As I construe the contract between
plaintiff and the construction company, a number of the find-
ings of fact are immaterial; but as a wish was expressed
that the findings cover the case as presented, they have been
introduced. . Giving to the words used in this contract their
ordinary and proper meaning, and considering all its provis-
ions together, it seems to me it must strike all minds alike,
that the road which the defendant agreed to build was to be·
connected by bridge or ferry, with the La Crosse, Trempealeau
& Prescott road joined to it, so far as one road can be joined
to another, by bridge or ferry. But if the construction of the·
contract were doubtful, the surrounding circumstances, and

the omission of any mention in the contract of any other method of connecting the roads, it seems to me, relieve it of all doubt. We are to presume that the parties, in making the contract, acted from interested motives. The construction company was already bound by its contract with the St. Paul & Chicago company to build the road from St. Paul to Winona, and its construction was then going on. The charter of the St. Paul & Chicago company required it to build to Winona. But neither the construction company nor the St. Paul & Chicago company were bound to connect the road with the La Crosse, Trempealeau & Prescott road. This was all well known to plaintiff when it made the contract. That the road would be built to Winona, and soon, was settled; whether the road would connect with the La Crosse, Trempealeau & Prescott road, was unsettled. So all that plaintiff secured by the contract was defendant's agreement to make this connection. It is claimed that the present use of the Winona & St. Peter road, and the bridge, by the Milwaukee & St. Paul company, is the connection contemplated by the contract. No mention is made in the contract of such use, or any use, of the Winona & St. Peter road. To have built the St. Paul & Chicago road from the point where defendant left it to any point on the river bank at all possible to connect it by bridge or ferry with the La Crosse, Trempealeau & Prescott road—running, as it necessarily would for a considerable distance, through the improved part of the city— would have involved a large expenditure of money; more, no doubt, than the value of the bonds in question. Surely, then, if it had been the intention of the parties that this connection should or might be made by the use of the Winona & St. Peter road, defendant would have insisted that its right to so connect be plainly and fully stated in the contract. So, with plaintiff, it is not to be presumed that it would be willing to give so large a sum of money for such connection, and at the same time be so indifferent about its promise of permanency and its business facilities. Is it credible that if the

parties had intended such a connection they would have failed to make specific provision for it? Defendants lay great stress. upon certain expressions about securing a line of travel through Winona. If, judging by appearances at the time, a line of travel through Winona could have been secured by connecting through the use of the Winona & St. Peter road, and could not have been secured by the other method, there might be force in defendant's position. As it is, I see nothing in it. The bridge clause merely describes the bridge."

The defendants subsequently moved for a new trial, and, this motion having been denied, they thereupon appealed.

*Bigelow, Flandrau & Clark* and *Harvey Officer*, for appellants.

*Wilson & Taylor*, for respondent.

CORNELL, J. All the evidence is before us, and the question is presented whether, upon the uncontroverted facts as disclosed, the action is maintainable against the defendants. The point in controversy concerns rather the construction of the agreement between the city and the construction company, than what has been done under it in the way of performance. In respect to the latter it is conceded that the La Crosse, Trempealeau & Prescott Railroad was built, equipped, and put into operation as provided in the agreement, and that the stipulation in that regard was fully complied with. The following facts are also incontestably established by the evidence, and so substantially found by the court. Within three years from date of the agreement the construction company built and completed in a good, substantial manner the St. Paul & Chicago Railway from St. Paul to the city of Winona, (excepting a bridge across the Mississippi river at Hastings,) and connected it inside the city limits with the Winona & St. Peter Railroad, so that trains of cars could pass and repass from one to the other without break or interruption, and such connection has been maintained ever since. Within one year from the same date it built and completed that portion of said Chicago & St. Paul Railway "between a point on the Winona &

St. Peter Railroad, at or near Minnesota City, in Winona
county, and the village of Minneiska, in Wabasha county,"
and on its completion in January, 1871, the Winona & St.
Peter Railroad Company equipped and commenced operating
the same under a written lease from the St. Paul & Chicago
company, and thence continued to operate it until the com-
pletion of the entire road in October, 1871. The Milwaukee
& St. Paul company then took possession of the whole road,
under an arrangement or agreement with the St. Paul & Chi-
cago company, and equipped and operated it under such
arrangement till January, 1872, when it purchased the road,
with all the cars, engines, property and franchises thereto
belonging, and has ever since operated it and kept it fully
equipped as a first-class railway. It is also in evidence and
uncontradicted, although upon this point there is no specific
finding by the court, that these several agreements between
these companies were entered into with the assent and
approval of the construction company. The further fact
is found that a truss railroad bridge was built and completed
in the spring of 1872 across the Mississippi river at Winona,
connecting the La Crosse, Trempealeau & Prescott and the
Winona & St. Peter Railroads, and since that time an unbroken
railroad connection has existed and been maintained between
the first named road and the St. Paul & Chicago Railway, by
the use of the intervening portion of the Winona & St. Peter
Railroad, under satisfactory arrangements between the compa-
nies, so that, in fact, there has been an unbroken line of rail-
way in constant use and operation between St. Paul and
Milwaukee and Chicago, through Winona, over the St. Paul &
Chicago Railway, to its junction with the Winona & St. Peter
Railroad in Winona; thence along the latter through Winona,
and over the said truss bridge, to its junction with the La Crosse,
Trempealeau & Prescott Railroad, and so on to the east. Under
and by virtue of the contract existing between the St. Paul &
Chicago Railway Company and the construction company, these
agreements and arrangements, thus made and expressly

assented to, enured to the benefit of the construction company in the performance of its contract with the city, and the acts done thereunder must be regarded as its acts, within the meaning of that contract.

So, also, by the purchase of the road, in January, 1872, together with the rolling stock, franchises, etc., thereto belonging, the Milwaukee & St. Paul company, as the legal successor of the Chicago & St. Paul company, became, within the meaning of the contract with the city, the successor of the construction company, in respect thereto, so far that its subsequent acts in reference to the equipment and operation of the road likewise enured to the benefit of that company. No point is made that the road, or any part thereof, was not equipped or put into operation within the time required, nor upon the sufficiency of the equipment, or the manner in which the road has been operated.

The question for consideration, and the principal one concerning which there is any contention, relates to the kind of connection which the contract required between the Chicago & St. Paul, and the La Crosse, Trempealeau & Prescott Railroads, as a condition precedent to the delivery of the bonds, and whether the one made as this was, by the use of the intervening portion of the Winona & St. Peter Railroad, was a substantial compliance with the requirements of the contract in this regard.

Preliminary to this inquiry, it is pertinent to advert briefly to the character of some of the testimony offered by the plaintiff, and received under objection, and the rules of evidence applicable thereto, in order to determine what influence, if any, such testimony shall have in ascertaining the real meaning of the contract. The rule is too axiomatic to require the citation of authority for its support, that when parties have deliberately reduced their engagements to writing, in terms precise and unambiguous, their intention must be gathered from the whole instrument, and the language thus chosen to express their meaning, and parol evidence is inadmissible,

to add to, contradict or alter such language, or to support a construction at variance with the fair, plain import of the words themselves. When, however, the agreement rests in doubt and uncertainty, because of the use of terms of a technical character, or so indefinite in their reference as to be alike applicable to different things, such technical terms may be explained, and surrounding facts and circumstances may be shown, to enable the court to point the proper application as intended by the parties. The range of this inquiry must, of course, be limited to such extrinsic facts as have some relevancy to the subject of inquiry, and cannot be extended to embrace facts clearly foreign to any possible matters mentioned and referred to in the contract. But, in no case, can the mere admissions or declarations of a party to the agreement in respect to the purpose, meaning or effect of any of its provisions be received to aid or influence the court in reaching a correct interpretation. 1 Green. Ev. Part 2, c. 15.

The contract in question relates in terms to the construction, equipment and putting into operation, within the times therein specified, of the La Crosse, Trempealeau & Prescott Railroad, as then located, the St. Paul & Chicago Railway, from St. Paul to Winona, the erection of a truss bridge across the Mississippi at the last named place, the connection of the two roads in order to secure an unbroken line of railway travel through Winona, between St. Paul and Milwaukee and Chicago, and the issue of bonds by the city of Winona, in aid of the construction of the last named road.

These are the expressed subjects of the contract. No reference is had in any of its provisions to the construction of any other road, or the prevention of any other enterprise or undertaking. Inasmuch as the contract, in one of its operative clauses, requires in terms this connection between the two roads to be made "at Winona by bridge or ferry," it is insisted by respondent that the contract contemplated this as the only mode of establishing such connection, and therefore required the construction of the Chicago &

St. Paul road, not only "to Winona," but to some point on the bank of the river, within Winona, where the connection could be established simply by "such bridge or ferry."

On the part of the appellants it is contended that the subsequent provision of the contract, in reference to the construction of the truss bridge, allowed the company to make the required connection by joining its road within the corporate limits with the Winona & St. Peter, and using the latter in crossing the bridge and connecting with the La Crosse, Trempealeau & Prescott Railroad. This is the point in controversy between the parties, and the question is, which is the true construction of the contract.

To aid in the determination of this question parol evidence was received, under objection, of the discussions that took place pending the negotiation of the contract between the members of the common council and the city officers, and Mr. Shepard, who was acting as the agent of the construction company in making it, as to the meaning and effect of the contract, and its various provisions, the different objects sought to be accomplished, and the individual views, intentions, and understanding of those who participated in the negotiations.

With the same view evidence was received of a conversation between Mr. Shepard and Mr. Youmans, who does not appear to have had any official connection with the city at the time, but was only interested as a citizen and tax-payer, tending to show what meaning and construction was then being placed upon the proposed contract by the city, and that Shepard assented to the correctness of such constructions. It is impossible to conceive any legal ground upon which any of this testimony was admissible. The written agreement, in the exact form in which it was approved and authorized by the council, acting as a body, and duly executed by the proper city officers, is the only one which, in legal contemplation, the city, as a municipal corporation, can be deemed to have assented to or made; and when, as in this case, the language employed is plain and unequivocal, and no doubt arises as to

v.24m—14

the subjects referred to, the meaning of the agreement, and the intention of the city in making it, must be ascertained from the instrument itself. Resort cannot be had to the individual intention and understanding, or the motives of the agents or officers of the corporate body who negotiated or executed it, to interpret its meaning, or to determine its effect. A recognition of any such principle in the construction of the contracts of municipal, or the enactments of legislative bodies, would introduce an element of infinite embarrassment, if not hopeless uncertainty; for it would often occur that such individual motives and intentions would be found to be as various and diverse as the dispositions of those who had participated in making the contract or enacting the statute. In referring to the statements of the agent Shepard, testified to by the witness Youmans, the additional objection exists, that they were not made at a time when he was engaged in the business of his agency, and they formed no part of the *res gestæ* of the transaction. His admission to a stranger to the contract as to how it was understood by the city, and his assent to the correctness of such understanding, in no manner affected his principals, and furnished no evidence whatever as to the real meaning of the agreement.

The testimony in regard to the construction of the road from Winona to La Crosse, along the west bank of the Mississippi, the building of the bridge at La Crosse, and the subsequent operation of such road by the Milwaukee & St. Paul company, in connection with the Chicago & St. Paul road, was also inadmissible for any purpose. Under the contract between the construction company and the city, the right of the former to the bonds became complete immediately upon the construction of the truss bridge, the completion, equipment and putting into operation of the different roads and parts of roads therein mentioned, and the establishment of the required connection, provided these several things were done in the manner and within the times therein specified. The evidence in question had no tendency to disprove a per-

formance by the company in respect to either or any of these matters, and as the contract contains, as is conceded by respondent's counsel, no provision making the delivery of the bonds contingent upon the continued maintenance of such connection or line of travel, or the prevention of any other road, bridge, or line of travel through or from Winona, south or elsewhere, it is apparent that the evidence was incompetent in respect to either of these latter points.

In construing this agreement, then, all the testimony and evidence herein indicated as having been improperly received, must be excluded from consideration as wholly irrelevant and immaterial.

The preamble to the contract contains the following recitals: "Whereas, the building of a railroad from St. Paul to Winona is of great public utility and benefit, and a public improvement which it is believed would be particularly beneficial and advantageous to the city of Winona; and whereas, said St. Paul & Chicago Railway will connect by bridge or ferry at Winona with the La Crosse, Trempealeau & Prescott Railroad, now being constructed, and will, when both said roads are completed, open and furnish an unbroken line of travel by railroad through Winona, between St. Paul and Milwaukee and Chicago, which is also considered especially beneficial and advantageous to the city of Winona; and whereas, in view of the premises, and as an inducement and part compensation to the Minnesota Construction Company, the city of Winona is willing and proposes to issue and deliver to the said construction company its bonds to the nominal amount of $100,000, to aid in the building of said railroad from St. Paul to Winona, and for the purpose of thus securing a line of travel by railroad, between the east and the west, through said city as aforesaid, the city of Winona, in consideration of the premises, hereby agrees * * to issue said bonds, to be placed and held in escrow, to be delivered as hereinafter provided." This is certainly a very explicit and unequivocal declaration of the purposes and objects, as well as the con-

siderations, which induced the city to make the contract to issue and deliver its bonds. The leading purpose, as thus expressed, was to secure an unbroken line of railway travel between the east and the west, through Winona, over the two designated lines of railroad, which were then in process of construction, and which it was then contemplated would be connected by bridge or ferry at Winona. To this end, and "to aid in the building of said railroad from St. Paul to Winona," the city proposed and agreed to issue and deliver its bonds. The purposes and objects of the agreement being thus deliberately and specifically stated, its operative clauses should be construed accordingly, unless a case of plain repugnancy is disclosed by some of its provisions. The court is not at liberty, in interpreting the instrument, to hunt for an intention not expressed, in disregard of one thus openly avowed by the parties themselves. No such case of repugnancy is found in this agreement. By it, the construction company agrees—*First*, "either in their own name, or that of their successors or assigns, or in the name of the St. Paul & Chicago Railway Company, to build and equip a good and substantial railway from the city of St. Paul to the city of Winona, (excepting a bridge across the Mississippi river at Hastings,) and put it into operation within three years from that date, and to connect at Winona, by bridge or ferry, with the La Crosse, Trempealeau & Prescott Railroad;" *second*, that that portion of the road between Minnesota City and Minneiska shall be built, equipped, and put into operation in one year; *third*, that the La Crosse, Trempealeau & Prescott Railroad shall be built, equipped, and put into operation, etc., in 1870.

Following this are specific provisions providing for a return to the city of the bonds and coupons placed in the hands of the depositary, upon the occurrence of a default in the performance of any or either of these and other stipulations, the third and most important of which, as bearing upon the question under consideration, is as follows: "*Third.* If a

railroad is not built, equipped, and put into operation from St. Paul to Winona, (except the bridge at Hastings), as aforesaid, connnecting at Winona, by bridge or ferry, with the La Crosse, Trempealeau & Prescott Railroad, within three years from this date, then, and in that event, the said bonds shall be by said depositary returned to said city of Winona or its legally authorized agent; *but in no case shall the said bonds or any part thereof be delivered by said depositary to the said Minnesota Construction Company, until a truss railroad bridge is constructed across the Mississippi river at Winona, connecting the said St. Paul & Chicago Railway, or the Winona & St. Peter Railroad, with the La Crosse, Trempealeau & Prescott Railroad, at the present terminus of the last named railroad.* But if, in each and every of the respects above mentioned, the said railroads and the several parts of said railroads are built, equipped, and put into operation within the times and in the manner above agreed, *and said railroad bridge constructed as above provided,* then, and in that event only, shall the said bonds be delivered to the said Minnesota Railway Construction Company by said depositary." The contract also contains a further provision, which allowed the interest coupons falling due, while the bonds were being held in escrow, to be delivered to the company as they matured.

It is a conceded fact, which is also apparent from the face of the instrument, that the two clauses which we have italicised were not contained in the original draft of the contract, but were inserted afterwards, and before execution, at the instance of the respondent. This fact explains the apparent incongruity in some of its provisions. It is clear that their insertion somewhat modified the agreement; for while, as originally drafted, the contemplated connection was to be either by a bridge or ferry, at the option of the company, either of which being done entitled it to the bonds, as finally adopted, it is equally clear that no right to the bonds or any part thereof could accrue until a railroad truss bridge was constructed, connecting either the St. Paul & Chicago Rail-

road, or the Winona & St. Peter Railroad, with the La Crosse, Trempealeau & Prescott road. This practically deprived the company of its privilege of making the ferry connection, without prejudice, however, to the main object of the contract on the part of the city—the unbroken line of railway travel—which was not only preserved, but the additional benefit was secured of an unbroken, continuous line of railway, constituting a through railroad between the east and the west, at that point. In surrender of the ferry privilege, however, the company by this provision obtained the option of forming the connection either by an extension of its own road over the bridge to the point of junction with the La Crosse, Trempealeau & Prescott road, and there making the union, or by uniting with the Winona & St. Peter road, and using the intervening portion of it as the connecting link. Either would subserve the purposes of the contract, and give to the city the substantial thing for which it contracted, "an unbroken line of railway travel through the city from St. Paul to the east."

And the next preceding clause of the contract expressly declares that "if, in each and every of the respects above mentioned, the said railroads are built, equipped, and put into operation within the times and in the manner above agreed, and said railroad bridge constructed as above provided, *then and in that event*, and in that event only, shall the said bonds be delivered to the construction company by said depositary." No allusion is here made to the establishment of any ferry connection or any connection by bridge, except what is implied by the phrase, "and said railroad bridge constructed as above provided;" that is, "the truss railroad bridge connecting the said St. Paul & Chicago or the Winona & St. Peter, with the La Crosse, Trempealeau and Prescott Railroad." The express mention of this bridge in this connection, and the specific requirement that it shall be constructed as above provided, necessarily excludes the idea that any other "bridge" or "connection by bridge" was intended or referred to in the

preceding portion of the paragraph, which relates simply to the building, equipment, and putting into operation, "in each and every respect," as particularly designated in the contract, of the said railroads and the several parts thereof. In other words, the plain meaning of the clause is this: If the said La Crosse, Trempealeau & Prescott Railroad is built, equipped, and put in operation, as provided in the contract, also the Chicago & St. Paul Railway, from St. Paul to Winona, and that part thereof from Minnesota City to Minneiska, at the time and in the manner, in every particular, as specified, and, in addition thereto, the truss bridge is constructed across the river at Winona, so as to make a connection between the former road and the Chicago & St. Paul, or the Winona & St. Peter, then, in that event, the contract was to be deemed complied with, and the bonds were to be delivered.

We fully agree with the conclusion reached by the supreme court of the United States, in its consideration of this same agreement, in the case of *City of Winona* v. *Cowdrey*, 3 Otto, 612, that "it was optional with the construction company, under this contract, to build the St. Paul railway over the bridge, and form an actual junction with the La Crosse road, or to build it to any point in the city, and make the required connection by means of the Winona & St. Peter road. Either of these modes would secure the object desired by the city—an uninterrupted communication by rail, from St. Paul across the river at Winona, to the eastern seaboard."

Regarding the determination of this question as decisive of the case, it is unnecessary to consider the other points presented. The decision of the district court, ordering judgment against the defendants, and the order denying a new trial, are reversed.