CITY OF WINONA *vs.* MINNESOTA RAILWAY CONSTRUCTION COMPANY.

January 10, 1882.

**Amendment of Pleadings —Review of Action of the District Court.—** Applications for amendment of pleadings are addressed to the discretion of the court, and its action will not be set aside unless it is apparent that the court has abused its discretion. The question whether the court has exceeded its discretion in allowing amendments to pleadings before the trial may be reviewed upon appeal from the judgment.

**Conversion of Coupon Bonds — Measure of Damages.—** The plaintiff had executed its negotiable coupon bonds, which, by their terms, bore interest at the rate of 6 per cent. per year, and had deposited them in *escrow*, to be delivered to the defendant only upon the performance of certain conditions. The defendant had wrongfully procured the delivery of the bonds, without the performance of the conditions, and had sold and disposed of them for a valuable consideration. *Held*, that the measure of plaintiff's damages (the bonds still outstanding) is the amount of the bonds, so procured and negotiated, at the time of the recovery, interest being computed at the rate of 6 per cent. upon the principal of the bonds to the date of judgment, and also upon coupons maturing before the judgment at the legal rate of 7 per cent. from the time of their maturity until judgment.

Appeal by defendant from a judgment of the district court for Steele county, where the action was tried by *Stearns*, J., (acting for the judge of the 5th district,) without a jury.

*Bigelow, Flandrau & Squires*, for appellant.

*Thos. Wilson*, for respondent.

DICKINSON, J.* This is an appeal from a judgment in favor of the plaintiff, and presents for review (1) the action of the court below in allowing an amendment of the complaint; and (2) the correctness of the amount of the judgment. The action was originally commenced in August, 1874, against the Minnesota Railway Construction Company and Horace Thompson, and has been three times before this court upon appeal. The decisions upon such appeals are reported in 24 Minn. 199; 25 Minn. 328; and in 27 Minn. 415.

*Clark, J., having been of counsel, did not sit in this case.

The general nature of the original issues appears in the report of the case in 24 Minn. 199, as well as the contract, the interpretation and performance of which were drawn in question.

It should be further stated that the complaint, as it stood at the time of the first trial, set forth several particulars in respect to which it was alleged that the contract had not been performed; but did not aver specifically that no truss railroad bridge had been constructed across the Mississippi river at Winona, connecting the St. Paul & Chicago railway or the Winona & St. Peter railroad with the La Crosse, Trempealeau & Prescott railroad, which was, by the terms of such contract, made a condition precedent to the right to have the bonds delivered. Nor were any facts pleaded in the original complaint upon which a reformation of the contract was sought.

After the decision in this court, upon appeal after the first trial, in which the decision of the district court, ordering judgment against the defendants, and the order denying a new trial, were reversed, the plaintiff moved in the court below for leave to amend the complaint by alleging facts upon which a reformation of the contract was sought, so that it should express the agreement which, upon the former trial and upon such appeal, had been claimed by the plaintiff to be the correct interpretation of the contract. Plaintiff also sought leave to amend the complaint by alleging that neither this defendant nor any company or person had, prior to the commencement of the action, constructed or caused to be constructed across the Mississippi river, at Winona, a truss railroad bridge connecting the St. Paul & Chicago railway, or the Winona & St. Peter railroad, with the La Crosse, Trempealeau & Prescott railroad.

This motion was made upon the record already made in the case, and upon affidavits which tended to show that, until the decision in the supreme court of the United States in the case of *City of Winona* v. *Cowdrey*, in December 1876, (93 U. S. 612,) the plaintiff's attorney believed the true interpretation of the contract required a connection across the river, between the St. Paul & Chicago railway and the La Crosse, Trempealeau & Prescott railroad, to be made directly and immediately by a bridge or ferry, as a condition precedent to the delivery of the bonds; and that until the decision of this court, upon

appeal after the former trial in this action, he believed it competent for the plaintiff to show the circumstances surrounding the parties when the contract was entered into, in order to aid in the interpretation of it.   In fact, upon the former trial, such evidence had been presented on the part of the plaintiff, and received by the court under objection.   See 24 Minn. 199.   The affidavits further tended to show that at the time the contract was entered into both parties understood that under it, and by its provisions, the defendant should become entitled to the bonds only upon the condition of the construction of the St. Paul & Chicago railway to such a point in Winona, on the west bank of the river, as would enable connection to be made immediately by bridge or ferry with the La Crosse, Trempealeau & Prescott railroad at its terminus on the opposite side of the river, and only upon such connection being made; and that, by mistake, the real agreement of the parties was not embraced in the written contract.

On the other hand, counter-affidavits were presented upon such motion, controverting, in some respects, those presented on the part of the plaintiff, and going to show that the contract did express the real agreement of the parties.   They also showed that the action of Cowdrey against the city, referred to in plaintiff's affidavits, had been commenced in 1873 in the United States circuit court, to recover upon interest coupons of the bonds constituting the subject-matter of this action; that the plaintiff's attorney in this action was its attorney in the action commenced by Cowdrey; that that case was tried in January, 1874, resulting in a disagreement of the jury, and was again tried in June, 1874; that at both of such trials the court had, in its charges to the juries, interpreted the written contract substantially as it was construed by this court on the appeal, after the former trial of this cause; that although the issues were substantially the same in the *Cowdrey Case* as in this, yet no evidence was offered upon the trial of the *Cowdrey Case* to show the negotiations in making the contract, or the understanding of the parties as to its meaning, nor any question made that the contract did not express the real agreement of the parties.

Upon this application for amendment it was not shown that plaintiff had not always known the manner in which the bridge connecting the La Crosse, Trempealeau & Prescott and the Winona & St. Peter railroads had been constructed; that is, that that portion of the structure crossing the sand-bar or island in the river was pile bridging and not truss bridging.

Upon the hearing of this motion, the court before which the former trial had been had, refused the amendment upon which a reformation of the contract was sought; not, as it appears, as a matter of discretion, but for the reason that the contract could not be amended so as to charge defendant Thompson (the depositary of the bonds, and who was not a party to the contract) with a liability not incurred under the original contract. The court allowed amendment in respect to the non-building of a railroad truss bridge. The plaintiff then again moved before the same court for leave to make the amendment which had been refused, upon condition of dismissing the action as to Thompson; and upon hearing upon this latter motion the court made an order allowing both the amendments sought, upon condition of dismissing the action as to Thompson. The action was then formally dismissed as to Thompson. From this order allowing the amendments defendant appealed to this court. The appeal was dismissed, for the reason that such order was not appealable. 25 Minn. 328.

Upon the amended pleadings the cause was again tried before *Stearns*, J., without a jury, in March, 1879. Upon such trial the plaintiff offered evidence to prove the allegations upon which a reformation of the contract was sought, but no relief upon that part of the case was granted to plaintiff. The court, however, found as a fact, in substance, that no truss bridge had been constructed, as required by the contract, and that the bridge of the Winona & St. Peter railroad, by means of which the connection between the St. Paul & Chicago and the La Crosse, Trempealeau & Prescott railroads was actually made, was not a truss bridge, the structure being pile bridging for 1,000 feet of its length, where it crossed an island or sand-bar in the river. It was hence decided that this defendant was not entitled to the bonds in question, and a recovery was accordingly

awarded the plaintiff. From the judgment entered upon such findings this appeal was taken.

As to that part of the order allowing an amendment by alleging facts upon which a reformation of the contract was sought, no serious question arises here. That issue, brought into the case by the amendment, was practically eliminated again at the trial. The result was not unfavorable to the defendant, and no such prejudice was suffered as should call for a review of the action of the court below in allowing that amendment. Nor is it here claimed by defendant that this matter is important except incidentally, and as it. may bear upon the action of the court in allowing the amendment upon the other branch of the case.

· We proceed to consider more particularly the question whether the court, in allowing that amendment, exceeded its authority. Upon the court is expressly conferred authority to allow amendments to pleadings "before or after judgment, in furtherance of justice, and on such terms as may be proper, * * * by adding or striking out the name of any party, or by correcting a mistake in the the name of a party, a mistake in any other respect, or by inserting other allegations material to the case." Gen. St. 1878, c. 66, § 124. To this end the trial court must necessarily exercise its discretion, in view of the circumstance of each particular case, and no fixed rule can be laid down by which the propriety of allowing such amendments shall be determined. So long as the court in such matters acts within the limits of its discretion, its action will not be reviewed and its propriety or expediency considered. It is only when it is claimed that the limits of discretion have been exceeded that an appellate court will look into the matter, and only when there has been a plain abuse of discretion will the action of the court below be set aside. Fowler v. Atkinson, 5 Minn. 399, (505.)

. The question presented for our consideration is whether the allowing of this amendment was, under the circumstances, an abuse of discretion. The amendment in itself was a proper one, and, if the application for its allowance had been seasonably made, no serious question could have arisen as to the right of the court to grant it, for such amendments are allowed with much liberality in furtherance of

justice. But it is not deemed necessary to the validity of the allowance of the amendment that the previous neglect or default of the plaintiff be fully justified. The discretion of a court, in relieving from mistakes or defaults, is not confined to cases involving no fault or negligence of the moving party. To the end that justice may be done, relief may, within proper limits, be granted from the consequences of positive negligence. But even discretion may be exceeded and abused, and when, upon bare inspection of the record presenting the matter for review, and without the necessity for consideration, it is apparent that such has been the case, the proper remedy should be applied.

It is worthy of notice that although the fact that a truss bridge had not been constructed was not set forth in the original complaint as a ground of plaintiff's claim, yet the answer did allege affirmatively that such bridge had been constructed, as prescribed by the contract; and upon the trial defendant had offered evidence to prove the fact so pleaded. Plaintiff had then introduced rebutting evidence going to show that about 1,000 feet in length of the structure, where it crossed a sand-bar or island in the river, was not truss but pile bridging. More than this, the court had made an express finding upon such evidence that a truss bridge had been constructed. But, as the determination was in favor of plaintiff, there was no opportunity to obtain a review of such finding upon defendant's appeal.

Under these circumstances, occurring at the trial, it would have been proper for the court, upon the trial, to have allowed an amendment so as to have put in issue what had been thus voluntarily pleaded in the answer, and which was not responsive to any allegation in the complaint. Such an amendment, however, seems not to have been sought. The reason for not having pleaded this fact is very probably that which was suggested by this court after the second trial,—27 Minn. 415,—viz., that the parties supposed the bridge actually constructed to be such as would be deemed a railroad truss bridge, such as was required by the contract; and hence, up to this time, the case of plaintiff had been made to rest alone upon the construction of the contract requiring the building of the St. Paul road to the west bank of the river at Winona, and the immediate connec-

tion at that point, by bridge or ferry, with the La Crosse road at its terminus upon the eastern side of the river.

Although the affidavits upon which, in part, the motion was made do not allege that plaintiff's neglect to plead the fact was for the reason above indicated, yet we may well suppose from the whole record, which was before the court as the basis of this motion, that the court understood that to be the fact. The evidence upon the former trial had fairly tended to show the structure to be what would commonly be known and designated as a "truss bridge," and so the court had found it to be in fact. These circumstances, while perhaps they do not justify or entirely excuse plaintiff from the inference of negligence in the matter referred to, furnished reasonable grounds for the consideration of the trial court when its discretion was invoked. Moreover, it is not improbable, in view of the final result upon the trial of this issue, that the court entertained doubts as to the correctness of its own conclusion that the bridge in question was a truss bridge, such as the contract contemplated.

Perhaps the strongest reason that could be urged to oppose the granting of amendments to the complaint, at the time when this application was made, would be the fact that the allowing of the application must result in a retrial of the cause; while, as the case then stood, the entire ground upon which a recovery was sought had been determined to be untenable, and it probably only remained for the district court to enter judgment dismissing the complaint. But the force of this objection was to a considerable extent overcome, so far as the amendment now being considered is concerned, by the fact that a case was made deemed to be sufficient by the court, upon which it was considered that an amendment should be allowed setting forth mistake in the contract, and upon which reformation of it might be sought. The court before which the application was made was to give such credit to the proofs presented in this regard as they might have been entitled to; and it may have well been considered by the court conducive to the ends of justice that the written contract by which the rights of the parties, in a matter of so great importance, were to be determined, should be made to express their real agreement, and that the mistake of the attorney, shared in also by the

court itself upon trial, as to the mode of proving the fact, should not preclude an amendment so as to present that matter for judicial investigation.     Upon the affidavits and the record, the allowance of such an amendment was clearly within the discretion of the court. *Piersom* v. *McCahill*, 22 Cal. 127.     The allowance of such amendment would necessitate a retrial of the action; and if, whether or not the amendment as to the construction of the bridge was allowed, a new trial was to be had, the reasons opposing the allowance of the latter amendment would be much weakened.     For it is to be borne in mind that amendments are allowed after trial more sparingly and with greater caution than before trial; not by way of punishment for the negligence or fault of the parties, but that there may be an end to the litigation, and that parties may not be subjected to the vexation, delay and expense of successive trials.     The amount involved in this action is a matter which would properly, to some extent, affect the action of the court.     The recovery sought was $125,000.     We are not speaking of matters of legal right, for as to them there are no degrees or distinctions.     But, speaking generally, retrials and protracted litigation will be less readily suffered in causes of trival importance than in those involving matters of great moment.     In the one case, the mere expense of a retrial, or embarrassments of delay, may exceed in importance the subject of the litigation; in the other, the expense and vexation of protracted litigation may be of little consequence as compared with the magnitude of the interests concerned.

The points we have considered are, in brief, these:  (1) The amendment was proper in itself.     (2) The same matter had been made the subject of litigation on the former trial, although it was not in issue.     (3) The circumstances were such as to warrant the inference that the parties had supposed the bridge to be such as would be deemed to answer the requirements of the contract; hence the neglect to tender an issue upon that fact, while it was supposed a recovery would be sustained upon other grounds, may have been deemed by the court to have been mitigated.     (4) The amount in controversy was large, and the allowance of the amendment, so as to obtain a trial and judicial determination upon the fact in question, could not be presumed to tend to the final prejudice of the

parties, but rather to the attainment of the ends of justice.     To allow the amendment would not otherwise prejudice the defendant than by compelling it to litigate a question upon which the rights of the parties depended, and to submit to the decision of the court upon it.    To refuse the amendment would be to conclude the parties in a matter of great importance, without a legal determination and opportunity for review, in respect to such question.     .

In what has been said we have not assumed to present the reasons why the court ought to have allowed the amendment, but only to point out some of the considerations which may have moved the mind of the court in deciding, as a matter of favor, not of right, to grant the application.    The trial court was called upon to exercise its own discretion and judgment, and not that of any other officer or tribunal.    The allowance of amendments, incorporating in the issue matter proper in itself, is not to be set aside merely because the court may have erred in respect to the expediency of allowing the amendments.    It is considered that the court does not appear to have exceeded its authority in the premises.

It was claimed upon the argument that the question of error, in an allowance of an amendment to the pleadings, prior to the trial, cannot be considered upon this appeal from the judgment.    We hold otherwise, adhering to the former rulings of this court in this case.

The bonds drew interest at the rate of 6 per cent.    They are found to have been converted on the 27th day of March, 1872.    The interest coupons, payable January 1, 1872, had, pursuant to the terms of the contract, been detached, so that at the time of conversion the bonds purported to be the obligations of the plaintiff to the amount of $100,000, with interest from January 1, 1872, at the rate of 6 per cent.    The court allowed judgment for the sum of $100,000, with. interest at the rate of 6 per cent. until the date of conversion, and interest upon that amount after the conversion, until judgment, at. the rate of seven per cent.    This was erroneous.

It is true that generally, in actions in the nature of trover for the conversion of bills, notes, bonds, or other like securities, the measure of damages is, *prima facie*, the amount due on the security,—*Ninin-*

*ger* v. *Banning*, 7 Minn. 210, (274,)—with interest from the time of conversion. But this is not a case where such a rule is applicable. The rule itself is based upon the fact of the prevailing party being divested of his property, which was valuable to him as property. By the facts in this case it is apparent that the plaintiff has not been divested of its property by the alleged conversion of its bonds, nor is the action prosecuted upon that theory. What is complained of is, in effect, that by the wrongful acts of the defendant the plaintiff has become chargeable, and will be compelled to pay to innocent holders its own bonds, which, but for such wrongful acts, would never have become valid obligations against it. The bonds were not property having any existing value until, by the delivery complained of and the transfer to *bona fide* purchasers, they came in their hands to express an absolute obligation on the part of the city. The measure of damages, then, (the bonds being still outstanding,) is not what it would have been if the bonds had been securities owned by the city as its property, but rather the amount of the bonds at the time of the judgment, according to their terms; interest being added upon the overdue coupons, as is more particularly indicated hereafter. On account of the obligation which the acts complained of have imposed upon the plaintiff, that is the measure of its compensation at the time of this recovery.

Interest coupons unpaid bear interest, after their maturity, (*Welsh* v. *First Div., etc., R. Co.*, 25 Minn. 314,) at the legal rate—that is, at 7 per cent. Upon this basis the judgment should have been for (1) the principal sum of the bonds—$100,000; (2) the amount of the interest coupons which matured prior to this recovery, but after the conversion, (March 27, 1872,) with interest at the rate of 7 per cent. upon each of such matured coupons from date of its maturity to date of judgment; and (3) interest upon the principal of the bonds—$100,-000—at the rate of 6 per cent. from the time the last coupon matured, prior to the judgment, to the date of the judgment itself. If the application of this rule of computation would reduce the amount of the judgment appealed from at the date of its rendition, the defendant is entitled to have the judgment so modified; but the judg-

ment should not be increased by the application of this rule, since the plaintiff has not appealed.

The cause is remanded to the district court with directions to proceed as above indicated.