St. Paul Union Depot Company *vs.* St. Paul, Minneapolis & Manitoba Railway Company and another.

June 28, 1886.

**Conveyance of Ground for Union Depot—Reservation of Tracks.**—A reservation in the deed of conveyance from the St. Paul, Minneapolis & Manitoba Railway Company to the St. Paul Union Depot Company, of certain premises as a site for a union passenger depot, considered and construed.

Appeal by plaintiff from a judgment of the district court for Ramsey county, where the action was tried by *Brill*, J., without a jury. The object of the action was to enjoin the defendant the St. Paul, Minneapolis & Manitoba Ry. Co. from assuming or agreeing to afford depot privileges or accommodations to any other railroad company in plaintiff's depot without plaintiff's consent, and from running to or from the depot the cars of any other company that shall not have become a member of the plaintiff corporation; and to enjoin the other defendant from running passenger cars to or from the depot, or making use of it without first arranging therefor with the plaintiff—the last named defendant, at the time the suit was brought, using the access to the depot and its accommodations furnished it by the St. Paul, M. & M. Ry. Co.

*J. M. Gilman, Gordon E. Cole,* and *M. D. Munn,* for appellant.
*Greenleaf Clark,* for respondent.

MITCHELL, J. The question in this case is the extent of the rights reserved to the St. Paul, Minneapolis & Manitoba Railway Company,

in the deed of conveyance from it to the St. Paul Union Depot Company of certain premises as a site for a union passenger depot, in the city of St. Paul.   This involves the construction of the following reservation contained in the deed, viz.: "But with this express reservation and qualification: That the said party of the first part, its successors and assigns, shall have the perpetual and exclusive use and control, and the right to such use and control, of the three most northerly tracks in the union passenger depot to be constructed and maintained by the said party of the second part on said grounds, and of proper and suitable platform room between the same and adjacent thereto, for its and their own business, and the business *of such other railroad company or companies as the said party of the first part is now, or itself, its successors or assigns, shall at any time hereafter be, under obligation to furnish or provide with passenger depot accommodations at the city of St. Paul.*"

This must be construed with reference to the whole deed, and the other contemporaneous contracts which were really a part of the same transaction, and in the light of the surrounding facts and circumstances, in order to correctly apply the language to the subject-matter, and arrive at the real intention of the parties.   We cannot here take time or space to refer in detail to all these matters, which are fully disclosed in the record.   We can do little more than state our conclusions, as follows:

1. This language clearly reserves to the Manitoba Company the use of these three tracks, not merely for the business of those companies to whom it was, at the time of the execution of the deed, under obligations to furnish depot accommodations, but also for that of any other companies with which it might thereafter contract to furnish such accommodations.   The words, of their own force, include this.   Furthermore, at the date of the deed, the Manitoba Company was under no obligation, perfected or inchoate, to furnish depot accommodations at St. Paul to any company except the Northern Pacific.   Hence any other construction would do violence to the words, "or companies," as well as the words, "is now, or itself, its successors or assigns, shall at any time hereafter be."

The proviso which follows, viz.: "Provided that during such period

v.35m—21

or periods, if any, as the party of the first part, its successors or as-signs, shall not be under obligation to furnish or provide passenger depot accommodations at said St. Paul to or for any other railroad company, the said perpetual and exclusive use and control and right thereto, hereby reserved, shall be limited to the two most northerly tracks in said union passenger depot,"—evidently contemplates obli-gations to be incurred to companies other than the Northern Pacific; for these are not apt words to express an intent that when the obli-gation to that company ceased, the Manitoba Company should there-after be confined to two tracks.

Again, any other construction is inconsistent with the provision for a connection with the reserved tracks, which employs, with re-spect to the business for which accommodation is reserved, in addi-tion to that already quoted, the following language: "A proper and convenient railway track or tracks across said grounds, extending from such point or points as it or its successors or assigns shall select, on the northern boundary of said property hereby conveyed, to said tracks in said depot, and thereby connecting said tracks in said de-pot with the railroad of the party of the first part, *and the railroad of any other railroad company* which it now is, or it, or its successors or assigns, shall at any time hereafter be, under obligations to furnish or provide with passenger depot accommodations." That the words italicized do not refer to the Northern Pacific Company is apparent from the fact that by its contract with the Manitoba Company it was to use the tracks of the latter.

Further confirmation is found in the contract (Exhibit C.) between the Union Depot Company and the Manitoba Company, which was contemporaneous with the deed, and a part of the same transaction. In the preamble it states the purpose and extent of the reservation in the following unmistakable language, viz.: "For its and their own business, and the business of such other railroad company or com-panies as, *at the time of the execution of said deed, it was, or has since become, or itself, its successors or assigns, shall at any time thereafter be,* under obligation to furnish or provide with passenger depot accom-modations at the city of St. Paul." The same language is repeated with respect to the connection with the reserved tracks.

In fact, both the deed and the contemporaneous contracts are bristling with language showing that the intention was to extend the use of these reserved tracts to any companies with which the Manitoba Company might thereafter enter into new obligations to furnish depot accommodations; and, when the situation of the Manitoba Company at that time is considered, this is just what might have been naturally anticipated. These premises were ample for the accommodation of that company,—as well for its own business as for that of other companies which might desire accommodations at St. Paul through it. It owned one of the main lines of entrance for railroads into St. Paul. In view of the fact that such lines of entrance were not numerous, it was to be expected that other companies would, instead of building lines of their own into the city, seek entrance over the line of the Manitoba Company. In order to enable it to make favorable contracts for such use of its line, it was of importance that it should be able to furnish other companies with terminal facilities. Under such circumstances, it being under no obligation to sell its passenger depot grounds to the plaintiff, it would not be likely to do so, except on such terms, and with such reservations, as would fully secure the interests of its own line.

2. This reservation covers, not only the right to run trains in and out of the depot upon these three tracks, but also the right to general depot accommodations. This is so palpably manifest as to hardly need discussion. The use of the reserved tracks is conditioned upon the payment of "such just, reasonable, and equal rates of rent, dues, and charges as shall be paid by other railroad companies *enjoying depot accommodations in said depot.*" The reservation was for the business of the Manitoba Company and its tenants, and is no greater or different for the one than the other. It was to have the same rights for the business of its tenants as for its own, and was to pay the same rents, dues, and charges for the one as the other.

3. The right to the use of these reserved tracks by the Manitoba Company and its tenants was subject only to the payment of rents and charges, and to "rules and regulations" common to other companies using the depot. These "rules and regulations" have no reference to conditions which the Union Depot Company may prescribe

for admission to its corporate privileges.    They have reference merely to regulations governing the mode of conducting the business of the depot company, such as the manner of running trains on these tracks.    So far as subjection to such rules and regulations is concerned, there is no distinction between a company which is a member of the Union Depot Company and one using the reserved tracks under the Manitoba Company.    All are alike subject to these common rules and regulations governing the conduct of the business of the depot company.    But to confine the companies which the Manitoba Company might admit as its tenants to the use of these reserved tracks to companies already members of the Union Depot Company, is equally at variance with the language of the deed, with the evident purpose of the reservation itself, and with the practical construction which the parties have since put on their own contract.

As thus construed, this reservation, or exception, whichever it be called, is neither repugnant to the grant, nor in conflict with public policy, nor prejudicial to the interests of the Union Depot Company.    The public, so far as we can see, will be as well subserved as if the construction contended for by appellant should be adopted. The revenues of the depot company are not impaired, and its power to enforce all reasonable rules and regulations in the conduct of its business is unaffected.

Judgment affirmed.