ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY *vs.* ST. PAUL UNION DEPOT COMPANY.

September 30, 1890.

**Conveyance and Lease Construed.**—A deed of conveyance from the St. Paul, Minneapolis & Manitoba Railway Company to the St. Paul Union Depot Company, and a lease from the latter company to the former, considered and construed with reference to the rights of the first-named corporation to the exclusive use and occupation of certain specified railway tracks and adjoining platforms in the train-house, or annex to a depot building.

Appeal by plaintiff from a judgment of the district court for Ramsey county, where the action was tried by *Otis, J.*

*M. D. Grover* and *Geo. B. Young,* for appellant.

*Gordon E. Cole,* and *W. H. Norris,* for respondent.

COLLINS, J: This action was brought to restrain defendant, a corporation, from erecting a train-house or annex to its depot building proper, upon supports so placed as to interfere with certain rights and privileges alleged to have been secured and reserved to plaintiff corporation in and by virtue of a deed wherein the plaintiff was grantor and defendant the grantee, and to compel the latter to remove obstructions, and replace a certain railway track and platform room also secured and reserved to plaintiff in the deed before men-

tioned.    The plaintiff appeals from a judgment in its favor for a part
of the relief demanded in its complaint.

The defendant corporation organized in January, 1879, for the
purpose of constructing and maintaining a union depot in the city
of St. Paul.    Its promoters and stockholders were the railway com-
panies, seven in number, then running their trains into the city, the
object being to secure better terminal facilities for all.    Each in-
corporator was an officer or connected with one of said companies,
and was acting for his company.    The First Division of the St. Paul
& Pacific Company was one of the railway corporations participat-
ing in the organization of defendant, and was the owner of the tract
of land hereinafter mentioned as conveyed to defendant for depot
purposes.    Thereafter, but prior to such conveyance, this plaintiff
became the owner of the land, at the same time succeeding to the
rights and interests of the First Division Company in the defendant
organization.    Negotiations which had commenced for the purchase
of the land were continued with plaintiff, resulting in a sale and
conveyance thereof to defendant on January 13, 1880.    The deed
recited plaintiff's ownership of a certain larger tract of land, the
expediency of acquiring a part of it for the joint use of the various
lines of railway entering the city of St. Paul, and the necessity of
building and maintaining a union depot, to be erected and managed
by a company specially organized for the purpose.    It then, in terms,
conveyed to the defendant all of plaintiff's right, title, and interest
in a portion of the tract of land, describing it by metes and bounds,
and as shown on a map annexed to the deed; but subject, however,
to a reservation quoted in full and construed in *St. Paul Union Depot
Co.* v. *St. Paul, M. & M. Ry. Co.*, 35 Minn. 320, (29 N. W. Rep. 140,)
an action between the parties hereto arising out of this same con-
veyance.    It was also recited in the deed that the plaintiff, grantor,
should pay such just, reasonable, and equal rents, dues, and charges
for its use of the premises, as specified and reserved, as should be
paid by other companies enjoying the proposed depot accommoda-
tions.    The conveyance was also upon condition subsequent, that the
grantee should, within a reasonable time, build and provide a union

passenger depot and thereafter maintain the same upon the demised premises. Its tenure, as expressly stipulated in the deed, was for such period of time as it should continue to use the land for the purposes for which it had been conveyed. The map, made a part of the conveyance, was of the blocks, streets, and alleys in the vicinity of, and on which was located, the deeded tract of land. This was shaded and well defined upon the map with its boundary lines, the courses, distances, and stations being given, marked, and numbered with the greatest care. On the 10th of February following, defendant executed and delivered to plaintiff a lease under which the latter was to use and occupy the three most northerly tracks, the adjacent platforms, and the depot accommodations. This lease recited the fact of the conveyance to defendant, and the terms and conditions upon which the conveyance was made. It also set forth in full the reservation made by plaintiff in regard to tracks and platforms. It contained a statement of the amount of stock each of the interested railway companies had subscribed and paid for, and the means by which sufficient funds were to be obtained for making the contemplated and necessary improvements. In it the defendant covenanted for plaintiff's use and occupation of its reserved tracks and platforms in accordance with the terms of the deed. It agreed to perform certain duties towards its tenants, including plaintiff, and was to have general control, management, and supervision of the grounds, depot, tracks, railways, and the business thereof. The method of determining, by apportionment between the several companies, the amount which each should pay monthly as rentals, tolls, and dues, was prescribed, and provision was made for the collection of the total amount required and apportioned, in case one or more of the tenant companies defaulted in its payment for a period of two months. The plaintiff, upon its part, contracted to use and occupy the defendant's depot and tracks for the arrival and departure of all passenger trains as soon as ready for use and occupation, subject to defendant's common rules and regulations. In connection with an agreement to pay all rentals, dues, and tolls apportioned to plaintiff as its share of the monthly expense, there was a provision that if default should be made in its payment for a period of three months the defendant might

at its option (the default remaining) summarily terminate the relations and contract between the parties. No cars were to be left standing upon the ground without defendant's consent, and for a reasonable compensation. It was also stipulated in the lease, the same provision being in the deed, that, if plaintiff should not thereafter be under obligation to furnish depot accommodations to another company, its right to an exclusive use and control of tracks and occupation of platforms should be limited to *two* instead of three tracks, with adjacent platforms, for such period of time as it had no such obligation.

There seems to be no dispute but that, pending the negotiations which ended in the sale of the land by plaintiff, there were considered and discussed a variety of plans for the proposed improvements. And that, prior to the making of the deed, a general plan for the depot building, train-house, tracks, and platforms had been approved by defendant's board of directors. Ten tracks were to be laid "in pairs" within the train-house, the most northerly thereof to be 26 feet from an alley-way, by which the deeded land was bounded upon the north. The platforms to be built between the pairs of tracks were to be 17 feet 4 inches wide. In 1881 the depot proper was erected, the tracks, 10 in number, laid, and the platforms built in accordance with the plan mentioned. A platform but 6 feet wide was built upon the northerly side of the most northerly pair of tracks. This pair of tracks and the narrow platform northerly, the track next southerly, and the platform northerly thereof, 17½ feet in width, were assigned to and used by plaintiff from the time they were placed on the ground until the month of June, 1884, at which time the depot building was destroyed by fire, or, rather, until it was rebuilt, soon afterwards. The defendant then tore up and removed nearly all of the most northerly track, leaving a single track of the pair, and erected upon the ground covered thereby, and the ground northerly thereof, a brick baggage and emigrant building 300 feet in length, with a platform upon its southerly side 9 feet wide. From the time of the erection of this brick building, plaintiff has had allotted to it, and has had the exclusive use and control of, the single track and the pair next thereto

upon the south.   Except as it has been interfered with by the handling of baggage, it has had the exclusive use of this 9-foot platform and the platform between the single track and the pair, and has also had the use, in common with other companies, of the platform on the south of its pair of tracks.   The baggage building is used by all of the companies doing business at the depot.   It has doors at each end, and also upon its southerly side, the latter opening directly upon the 9-foot platform.   A part of the building, its east end, has been rented by the defendant to an express company.   The plaintiff's use of the platform upon the south of the building along-side its single track, and of the wider platforms at each end, has been greatly interfered with by the necessary moving of loaded baggage and express trucks as they are propelled to and from the great number of trains entering and departing from the depot each day.   When removing the most northerly track in 1884, the defendant left about 200 feet at the easterly end, where it connected with a main track.   The westerly end of this has been swung to the north so as to make a spur reaching nearly to and about the middle of the easterly end of the baggage building.   This seems to have been to facilitate the handling of baggage and express packages.   Until just before the commencement of this action no real attempt had been made to erect the train-house.   Temporary wooden sheds had been built over each of the platforms between the pairs of tracks.   It was then determined, in 1889, to erect a substantial structure of glass and iron, 166 feet wide, and several hundred feet long, for a train-house or annex to the depot proper.   The roof of this house to be supported on its sides by iron pillars or posts set upon stone piers.   On the northerly side these pillars or posts to be placed along the platform in front of the baggage building projecting 20 inches therefrom, thus reducing the width of the platform at some points to $7\frac{1}{3}$ feet.   The stone piers to be built not far from the centre line of the space formerly occupied by the most northerly track.   The doors upon the southerly side of the building, opening onto the narrow platform, to be closed up, the baggage to be handled through large doors in the ends of the building, and, of necessity, over and across some portions of

the platforms, at either end of the building, used by plaintiff's pa-
trons. All tracks and platforms to be placed on the same level to
facilitate the moving of baggage trucks across the former. The de-
fendant, claiming that the exigencies of the situation made addi-
tional trackage imperative, also proposed to reduce the width of
platforms between the "pairs" to 14 feet, rearrange its tracks, and,
on the same ground, obtain space for and lay another track for
passenger trains. To this entire scheme the plaintiff objected, and
brought this action to restrain and prevent it. Upon findings of
fact judgment was duly entered in plaintiff's favor, but it was de-
nied much of the relief demanded in its complaint. It sought to
have the baggage and emigrant building removed, the track which
was taken out in 1884 permanently replaced for plaintiff's use with
a 17½-foot platform northerly thereof, and the proposed train-house
or annex built wide enough to cover this platform. It further and
strenuously insists, in respect to the annex, that it must be con-
structed and maintained so as to allow passengers from plaintiff's
incoming trains to pass directly from this platform to the alley-way
and adjacent streets upon the north without hindrance or obstruc-
tion. By its judgment the trial court declined to order a removal
of the baggage or emigrant building, and refused to interfere with
defendant's plans for constructing the train-house. The defendant's
plans for a rearrangement of tracks and platforms were modified
so as to give to plaintiff a pair of tracks upon the north, and the
most northerly track of the pair next upon the south. The platform
adjacent to the building to be made 10 feet wide in the clear, and
all doors opening thereon closed up. The platform between the
plaintiff's second and third track to be 14 feet in width in the clear.
This judgment places the tracks in pairs as they were originally,
shifting their location to the south, but decreases the platform space
allotted plaintiff to but 24 feet in width. The judgment was also
without prejudice to any right of action which plaintiff might there-
after have to secure additional platform room, or with respect to the
spur track, being the easterly end of the original northerly track.

The plaintiff's position in this controversy is that by the terms of
its deed it excepted three specific tracks with contiguous platforms,

of a certain width, for its own exclusive use and occupation, not then constructed, but to be thereafter built in accordance with a plat or map of the ground, and upon which plat or map these specified tracks and platforms were clearly and definitely located, together with defendant's contemplated depot building and train-house. And that this reservation is as valid, certain, and effectual as if the tracks and platforms had been built when the deed and lease, which must be considered and construed together, were executed and delivered. It claimed upon the trial below that a sketch or draft made by this defendant, when formulating its plan of improvement, should be treated as if, with all of its definiteness and certainty, it had been referred to and made a part of one or both of the instruments in which we find the contract between these parties, evidently written with great care and precision. But, if this position proves untenable, plaintiff urges that when the three tracks first built were assigned with certain platforms to its exclusive use, immediate possession following which continued for about four years, it secured an absolute right and title to these tracks and platforms, of which it cannot be deprived. This amounts to the proposition that whenever the plaintiff's right and title to tracks and platforms became located by assignment and occupation, they were forever fixed and unalterable, no matter what might be demonstrated in the course of time as to plaintiff's needs or necessities.

The elementary rule by which these writings must be considered, and this action decided, is aptly stated in *City of Winona* v. *Thompson*, 24 Minn. 199, 207, as follows: "The rule is too axiomatic to require the citation of authority for its support, that when parties have deliberately reduced their engagements to writing in terms precise and unambiguous, their intention must be gathered from the whole instrument and the language thus chosen to express their meaning, and parol evidence is inadmissible, to add to, contradict, or alter such language, or to support a construction at variance with the fair plain import of the words themselves. When, however, the agreement rests in doubt and uncertainty because of the use of terms of a technical character, or so indefinite in their reference as to be alike applicable to different things, such technical terms may be explained,

and surrounding facts and circumstances may be shown, to enable the
court to point out the proper application as intended by the parties."
Scattered all through the reports of this state, commencing with
*Baldwin* v. *Winslow*, 2 Minn. 174, (213,) can be found cases in which
this well-known rule of evidence has been applied to a great variety of
circumstances. That the plaintiff fully comprehended the impor-
tance of the union depot scheme, and its own commanding position
as the owner of the most desirable site for its location, is very ap-
parent from the writings which we are asked to construe. It was will-
ing to sell on condition that its land be used for the precise purposes
for which defendant was brought into existence, and upon the further
condition that it be allowed to retain for itself certain rights and priv-
ileges, unobtainable by any other stockholder. These conditions
were accepted and incorporated with great particularity in both deed
and lease. By the terms of the deed there was conveyed to defendant
all of plaintiff's right, title, and interest in the described premises,
subject only to the enumerated reservations and conditions. There
was reserved for plaintiff's perpetual and exclusive use and control
*the three most northerly tracks* in the depot, with *proper and suitable
platform room for its business*, with the proviso before mentioned
whereby its rights and privileges were to be restricted to two instead
of three tracks, under some circumstances. Rents, dues, and charges
for plaintiff's use and control were also mentioned as the same as
those imposed upon other tenants, and plaintiff was to be subject to
such rules and regulations as might be adopted by defendant for the
common government of all parties doing business with it. The lease
made a month later—practically but one transaction—used the exact
words of the deed when stating plaintiff's reserved rights. Otherwise
it contained the precise conditions and covenants entered into with
all other railway corporations who used defendant's depot accommo-
dations, hereinbefore noted. From an examination of the deed and
contemporaneous lease, the latter emphasizing the former, having in
mind the purposes for which plaintiff company co-operated with other
railway companies in organizing the defendant corporation, it is mani-
fest that there is no doubt or uncertainty in the terms of the agree-
ment made by these parties, and so carefully reduced to the written

instruments.   The language and meaning of these contracts, read separately or together, is strikingly plain and unambiguous.   By the deed the title to the entire tract passed to defendant for the uses and purposes declared in its articles of association, and upon condition subsequent that it should erect depot buildings, lay tracks, attach such appendages as were essential, and thereafter continue to use the premises for union depot purposes.   Upon the grounds conveyed by plaintiff it was to properly and adequately serve all railway companies then among its promoters or afterward admitted to its privileges, with passenger depot facilities.   Should it abandon the business the tract of land reverted to the grantor.   The latter reserved to itself the right to use and occupy, exclusively, the three most northerly tracks wherever they might be located.   Annexed to this was another stipulation that with these tracks there should always be proper and suitable platform room between the same and adjacent thereto, for plaintiff's business.   The right to three tracks, and the most northerly ones upon the premises, was made permanent, the right to proper and suitable platform room in connection therewith was made equally as unalterable.   The fact that "proper and suitable" platform room was guarantied to plaintiff for the transaction of its business, whether large or small, whether it should increase or diminish, in the future, in total disregard of what in time might prove convenient or become absolutely necessary for other occupants, and that the needs and interests of the defendant, as well as of its tenants, were made secondary and subservient to the enumerated rights and privileges of this plaintiff as to number and relative location of tracks and capacity of platforms, is conclusive evidence of the correctness of the rulings of the learned court below when it refused to consider testimony offered by the plaintiff for the avowed purpose of attaching and fastening upon the written contracts the terms and conditions of a parol agreement relative to the number and location of the three tracks designed for plaintiff's use, and the width of the contiguous platforms, alleged to have been made prior to the execution and delivery of the deed and lease.   The correctness of the views of the trial court is made obvious elsewhere and repeatedly in the deed and lease.   These in-

struments are in open and direct conflict with plaintiff's assertions as to the agreement on several points, and testimony of the nature offered by the latter on the trial would flatly contradict some of the terms and provisions found in the writings.

Again, if, as plaintiff insists, a plan of improvement so satisfactory, beneficial, and important to it had been made a part of the contract on which the plaintiff sold and the defendant bought, why was it that a carefully prepared map of the deeded premises, made a part of the conveyance, failed to show that a single track or platform had been determined upon? And we think we are justified in pursuing the inquiry further by asking why, if the plaintiff is now correct, did it convey to defendant for any purpose whatsoever that strip of land over which it now claims almost absolute dominion, (upon which the three tracks and adjoining platforms were originally built,) and all northerly thereof to the alley? This inquiry is made more pertinent and forcible when we reflect that plaintiff now asserts that among its reservations is the right and privilege of having its passengers upon incoming trains pass directly from its cars across a broad platform, upon defendant's northerly line, to the alley-ways and streets in that vicinity, instead of passing, as do all other passengers, through the depot building. This may be a feasible plan, may accommodate passengers, and possibly has become quite necessary. It might also prove of real advantage to the defendant itself as a rule or regulation for the government of its grounds, but it was not made a feature of the contracts between these parties and cannot be interpolated into what has been written.

Among the findings is one to the effect that plaintiff will have "suitable and proper" platform room for its business when assigned the exclusive use and occupation of two platforms, one 10, the other 14 feet in width in the clear. Thus, in all, but 24 feet of platform space. The plaintiff urges that this finding is unsupported by the testimony. While we should have been better satisfied with this finding were it supported by direct testimony as to what platform room was actually needed for the transaction of plaintiff's business, yet we think there was testimony reasonably tending to support the conclu-

sion of the trial court on this point.    Should the platform room thus allotted plaintiff prove inadequate in the future, it would be the duty of a court to determine its needs and necessities in this particular, and by judgment regulate the width of plaintiff's platforms in accordance with the plain terms of the written instruments.

· We have heretofore referred to plaintiff's contention that in any event it is entitled to a part of the relief denied below, because there was assigned to its use and control certain tracks and platforms in 1881 of which it had unquestioned possession for some four years. The reservation of tracks and platforms for plaintiff's use and control is not in the nature of an easement like a right of way, for, undoubtedly, when a right of way is once located and occupied it is fixed forever. If· a part of defendant's obligations and plaintiff's privileges are of the flexible character heretofore asserted, the latter's place upon the ground, except relatively, can never be permanently assured, and hence never has been.    Its space may expand or diminish in width, for its reservation of platform room is measured by its needs, not by the whims or caprice of the defendant. ·

The trial court, when considering this branch of the case, held that as the plaintiff's general manager, then its representative in defendant's directorate, as well as president of the defendant corporation, authorized and supervised the tearing out of the most northerly of the original tracks, and the erection of the baggage and emigrant building upon the ground previously occupied by the rails, the plaintiff was estopped from demanding a removal of the building, and the restoration of the track.    We see no reason at present for disagreeing with this view; but in determining, as we have, that both deed and lease are unambiguous, that the intent and meaning of the parties can be easily and fully gathered from the writings, we have disposed of the case, reaching the same conclusion but in a different manner.

. Finally, the plaintiff assigns as error a finding of the court as to the spur track.    But the order was that judgment be entered without prejudice to any right of action plaintiff might have with respect to the spur, and judgment was so entered.    The trial court expressly

declined to pass upon the plaintiff's rights as to this track, and the judgment herein does not operate as an adjudication of its rights. On this branch of the case we have nothing before us to review.

Judgment affirmed.